### Appeal of W. W. LAWRENCE & CO.　　Docket No. 1096.

> When a city proposes to take private property for the widening of a public street by the exercise of eminent domain and an affected property owner negotiates an arrangement and agreement with the city whereby he secures certain reimbursements of expenses and other special privileges in lieu of an award for damages and there is no convincing evidence either of the amount of damages or the value of the special privileges, it must be assumed that the benefits of the special privileges are not less than the amount of the damages, and no loss is sustained which can be deducted under the provisions of section 234 (a) (4) of the Revenue Act of 1918.

Submitted April 15, 1925; decided May 23, 1925.

*B. G. Simpich, Esq.,* for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This is an appeal from a determination by the Commissioner asserting a deficiency in income and profits taxes in the amount of $6,720.63 for a taxable period of eight months ended July 31, 1919.

#### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Pennsylvania, having its principal place of business in the City of Pittsburgh.

At the beginning of the year 1919 the taxpayer was, and for some years prior thereto had been, the owner of a tract of land in the City of Pittsburgh with a frontage of approximately 205 feet on West Carson Street and a depth of 170 feet. Upon part of this property there was a building 100 feet in width on the street, and the front portion of the building was four stories in height. It was occupied and used by the taxpayer as a factory and warehouse in its business of manufacturing and selling paints, varnishes, etc. There were no buildings on the remaining portion of the tract of land.

Some time during the year 1918 the City Council of Pittsburgh adopted an ordinance authorizing and directing the widening of West Carson Street by cutting off 10 feet along the entire front of the building and land owned by the taxpayer. Under this ordinance proceedings were begun, or were about to be begun, for the purpose of acquiring the said 10 feet of the taxpayer's property for the public use by condemnation.

At or about this time the taxpayer's business was enjoying a period of prosperity; its manufacturing plant was operating 24 hours a day, and the taxpayer, fearing that the threatened cutting off of the 10 front feet of its land and of its building would cause so much confusion, disorganization, and consequent loss of profits in its business in excess of any amount which it believed it could procure in damages for the taking of its property, set about to effect a compromise with the city. As a result of its efforts in this direction, in the early part of 1919 a special ordinance was adopted by the Pittsburgh City Council, by virtue of which the city agreed with the taxpayer that it would not require the cutting off of the entire front portion of the taxpayer's building but would, in lieu thereof, take the 10 front feet of the land for public use and permit the taxpayer to arcade the front 10 feet of its building, thus depriving the taxpayer of the use only of the 10 front feet of the ground floor of its manufacturing plant, and the taxpayer would cause the 10 front feet of its building to be arcaded, leaving the remainder of the front projecting over the sidewalk, and the city would pay to the taxpayer the actual cost of the changes in the building thus made necessary. The taxpayer on its part agreed with the city that, having been permitted to arcade its building and allowed to have the three upper stories thereof stand out over the sidewalk, it would make no claim for damages against the city on account of the said street widening.

This understanding and agreement was entered into both on the part of the taxpayer and the city, and was carried out, it being understood, however, that the city retained the right at any future time, and by future proceedings, to cause the 10 front feet of the upper three stories of the taxpayer's building to be removed. The widening of West Carson Street pursuant to the 1918 ordinance, and the special ordinance adopted in favor of this taxpayer, was completed. The taxpayer's building was arcaded over the sidewalk. The city paid the entire cost of such changes in the taxpayer's building as were found to be necessary, and the taxpayer was left in the undisturbed possession of the three upper floors of its building, and still retains such possession.

When the taxpayer made its income and profits tax return for the eight months' period ending July 31, 1919, it claimed a deduction

from gross income in the sum of $20,000 as a loss sustained by reason of the street-widening operation herein described. The Commissioner disallowed this deduction from gross income, and his action resulted in the determination of a deficiency in taxes, from which the taxpayer brings this appeal.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRUSSELL: It is the contention of this taxpayer that the City of Pittsburgh has taken a portion of its land and building for public use without having made just compensation therefor, and it produced at the hearing some testimony which was intended to prove that the 10 front feet, approximating 2,050 square feet, of its land fronting on West Carson Street which was taken by the city, had a value of approximately $20,000. It, therefore, claims a deduction from gross income for the taxable period during which the city appropriated this land for public use, on the ground that the value of the land taken was a total loss.

It appears from the record that the City of Pittsburgh proposed, by proper action, to take by condemnation proceedings the front 10 feet of the taxpayer's land and to require the removal of that portion of the taxpayer's building which stood upon land proposed to be taken. Had the original plans of the city proceeded without change the taxpayer would have been entitled to have this portion of its property appraised and damages awarded. But this proceeding was not carried out. When the taxpayer became aware of the threatened proceedings it entered into a negotiation with the city authorities and, purely as a business transaction between parties, each proposing to protect its own interests, the taxpayer offered to exchange its right to use the land desired by the city and its right to the ground floor portion of its building standing upon such land in consideration of being allowed to arcade the building and continue in the undisturbed possession and use of the three upper floors of the building. The taxpayer sought this solution of the situation to avoid disturbance to or disorganization of its business and the expense of remodeling the upper floors of its building. The city accepted the proposal of the taxpayer and granted to it the privilege of having the first story of its building arcaded and the upper floors remain undisturbed; the city paying the expense of such changes as were found necessary in the building. The consideration passing from the City of Pittsburgh to this taxpayer was the continued, undisturbed possession and use of the three upper floors of its building projecting over the sidewalk of the widened street, and a proportionately less interference with the taxpayer's business.

Where a portion of a property is taken for public use, the measure of damages is the difference between the value of the property before the taking and the value of what remains after the taking. But in the situation shown by the record of this appeal, even if we should accept the theory of the taxpayer that the property taken had a value of $20,000, we must, in measuring any claimed loss, deduct from that

$20,000 the advantages accruing to the taxpayer from its arrangement and agreement with the city. The first of these advantages was the privilege of having the three upper stories of its building remain undisturbed and projecting over the sidewalk of the widened street, and the second advantage was the benefit to the taxpayer of being permitted to carry on its business during the process of street widening without interference except as to one floor of its building. The taxpayer plainly anticipated that the arrangement agreed to by the city would permit the taxpayer to realize profits from its business during the period of reconstruction, of which it would otherwise be deprived, and in this appeal it has made no effort to show what such profits may have been or the amount of such profits which must be subtracted from any claimed loss before such loss can be allowed as a deduction from income.

By virtue of its arrangement with the city the taxpayer also retained the undisturbed possession of the front 10 feet of the upper three floors of its building, approximately 3,000 square feet of floor space, extending over the sidewalk of the widened street. It retains this floor space for an indefinite period, and the rental value of this floor space standing over the street for an indefinite period must be a very considerable amount. Such amount, whatever it may be, must also be subtracted from the claimed damages for loss of property taken. The taxpayer has offered no evidence as to the value of this concession to it by the city.

Thus, even allowing that the value of the property taken may have been the amount claimed by the taxpayer, we are left without sufficient information concerning the value of the advantages accruing to it which must be subtracted from such damages, and therefore we must assume that the benefits accruing to the taxpayer are at least equal to the damages sustained.

Having taken the view of the situation as above outlined, we are forced to the conclusion that the taxpayer has failed to prove that it has sustained any deductible loss during the taxable period in question, and that the Commissioner's rejection of the deduction claimed must be approved.